UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES F. CHANDLER, SR., Individually
and as Personal Representative of the
Estate of Janet Chandler, Deceased,

    Plaintiff,        Case No. 1:08-cv-1197

v.               HON. JANET T. NEFF

THE WACKENHUT CORPORATION,

    Defendant.
_____/


## OPINION

   This negligence action arises from the tragic death of Janet Chandler at the hands of some

of defendant's employees in 1979.  Pending before the Court is defendant's Motion to Dismiss

pursuant to FED. R. CIV. P. 12(b)(6) on the basis that plaintiff's civil claims against it are time-barred

(Dkt 24).  Plaintiff has filed a response (Dkt 26), and defendant has filed a reply (Dkt 28).  Having

reviewed the parties' written submissions and accompanying exhibits, the Court finds that the

relevant facts and arguments are adequately presented in these materials and that oral argument

would not aid the decisional process.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons discussed

herein, the Court concludes that neither Michigan's fraudulent concealment statute, MICH. COMP.

LAWS § 600.5855, nor the doctrine of equitable estoppel precludes defendant from obtaining

dismissal on the basis that the limitations period expired.  Therefore, defendant's motion is granted.

# I. BACKGROUND

Defendant is a security company incorporated in Florida. In the fall of 1978, defendant obtained a security contract in Holland, Michigan, and approximately seventy of defendant's out-of-town security guards took up temporary residence at the Blue Mill Inn where plaintiff's daughter, Janet Chandler, worked as the overnight front desk clerk (Am. Compl. ¶¶ 10-11).[1] Plaintiff alleges that some of the guards and motel staff had sexual relationships with each other, relationships that "bred jealousy and anger, much of it directed at Janet Chandler," for reasons not clear from the pleadings (*id.* ¶¶ 14-15, 17). Plaintiff alleges that several of the guards and motel employees conspired to "teach Janet Chandler a lesson" by beating, sexually assaulting, and killing her (*id.* ¶ 18). They acted on their plans sometime after midnight on January 31, 1979 (*id.* ¶¶ 19-33). The conspirators did not discuss the crimes over the years (*id.* ¶¶ 36, 39).

Following the February 7, 2006 arrest of Wackenhut employee Robert Lynch, six people were charged with first-degree murder arising from Janet Chandler's death, five of whom were Wackenhut employees in 1979 (Am. Compl. ¶¶ 40-41, 93). Two persons pleaded guilty to second-degree murder and were sentenced to terms of years in prison (*id.* ¶¶ 43-44). The other four persons were convicted by a jury of first-degree murder and sentenced to life imprisonment without the possibility of parole (*id.* ¶ 45).

On June 2, 2008, the Probate Court of Muskegon County, Michigan appointed plaintiff personal representative of the decedent's estate (Am. Compl. ¶ 101).

---

[1]For purposes of this motion only, defendant accepts as true the allegations in plaintiff's complaint (Mot. at 2).

On December 17, 2008, plaintiff commenced this action against defendant, invoking this Court's diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff alleges two claims: (1) Negligent Hiring and (2) Negligent Supervision or Retention. Regarding his Negligent Hiring claim, plaintiff alleges that defendant "failed to make appropriate psychological and psychiatric fitness-for-duty evaluations of its security guards and/or security guard supervisors" (Am. Compl. ¶ 50). Regarding his Negligent Supervision or Retention claim, plaintiff alleges that defendant failed to take further actions such as investigating, discharging, or reassigning its unfit employees (*id.* ¶ 58). Plaintiff alleges that defendant's negligence in the hiring, supervision, or retention of the involved employees is attributable to "policy decisions emanating from its principle [sic] place of business and main headquarters in Florida" (*id.* ¶¶ 53, 61).

Defendant proposed filing this motion to dismiss the complaint on the basis that plaintiff's claims are barred by the applicable statute of limitations (Dkt 7). Following a pre-motion conference on April 27, 2009, the Court issued a briefing schedule, permitting the parties to brief the dispositive question (Dkt 17).

Plaintiff subsequently filed an Amended Complaint, which added two new sections: "MCL 600.5855, 'Fraudulent Concealment'" and "Equitable Estoppel" (Dkts 19, 30). In the Fraudulent Concealment section, plaintiff delineates alleged affirmative acts by defendant and its agents to fraudulently conceal the claims and the identities of any persons liable for the claims. Specifically, plaintiff alleges that Arthur Paiva, then the lead guard supervisor assigned to the Holland security contract by defendant, committed the following affirmative acts of fraudulent concealment:

- conspired with other guards to cover up the decedent's rape and murder (Am. Compl. ¶ 72);

- concocted a scheme to report an abduction to the police (*id.* ¶ 73);

- used condoms during the rape to avoid detection (*id.* ¶ 74);

- washed the decedent's body (*id.* ¶ 75);

- removed the decedent's body and dumped it 40 miles away (*id.* ¶ 76);

- lied during a police interview (*id.* ¶ 77);

- forced others to witness the rape and murder and threatened the witnesses with their deaths (*id.* ¶¶ 78-80, 85);

- assigned another guard to photograph the rape and murder with the intent to use the photographs to blackmail the witnesses into silence (*id.* ¶¶ 81-84); and

- attended the decedent's funeral (*id.* ¶ 86).

Plaintiff also alleges that another of defendant's agents, James Nelson, committed an affirmative act of fraudulent concealment by reporting to authorities that he was speaking with the decedent on the telephone and overheard the "abduction" (Am. Compl. ¶¶ 90-91).

Plaintiff alleges that defendant also committed its "own affirmative acts," to wit:

- maintaining the corporate motto, "I know nothing, see nothing, and speak only in kind words" (Am. Compl. ¶ 87);

- maintaining "that a scandal was not to be attached to the company name" (*id.* ¶ 88);

- actively promoting a code-of-silence (*id.* ¶ 89); and

- directing Paiva and Nelson, within two days of the rape and murder, to secrete themselves in a hotel room to avoid media attention (*id.* ¶ 92).

Plaintiff alleges that the fraudulent concealment "worked" until Lynch's arrest on February 7, 2006, and that neither the police nor the decedent's family could have discovered the set of operative facts giving rise to the criminal prosecutions and concomitantly this civil action within the

applicable limitations period (*id.* ¶¶ 93-97). Plaintiff concludes that his action was timely filed because of the applicability of Michigan's fraudulent concealment statute, MICH. COMP. LAWS § 600.5855, and a saving provision that applies to actions by personal representatives of a deceased person, MICH. COMP. LAWS § 600.5852, which tolls the limitations period for an additional two years beyond the appointment of the personal representative (*id.* ¶¶ 98-102).

In the "Equitable Estoppel" section of his Amended Complaint, plaintiff alleges that defendant and/or its supervisors, agents, and employees, through misconduct and bad acts, actively prohibited plaintiff from commencing his claim within the general limitations period (Am. Compl. ¶ 104); actively concealed the claim and identities of potentially liable persons (*id.* ¶ 105); knew that the claim and identities of potentially liable persons would remain hidden through their misconduct and bad acts (*id.* ¶ 106); knew of the claim and identities of the potentially liable persons (*id.* ¶ 107); and acted with intentional or negligent conduct designed to induce plaintiff to refrain from bringing a timely action (*id.* ¶ 108). Plaintiff concludes that the doctrine of equitable estoppel therefore bars defendant from asserting that the claim is now "too late" due to the lapse of the limitations period (*id.* ¶ 109).

## II. DISCUSSION

### A. Motion Standard

Defendant moves to dismiss plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, FED. R. CIV. P. 12(b)(6), contending that plaintiff's complaint fails to state a claim upon which relief can be granted because the claims are barred by the governing statute of limitations. In deciding whether to dismiss a claim under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the

plaintiff. *See Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009). To survive dismissal, the complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 570 (2007)). Questions of concealment and diligence are questions of fact. *Int'l Union United Auto. Workers of America v. Wood,* 59 N.W.2d 60, 62 (Mich. 1953).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 129 S.Ct. at 1949. The determination that a complaint was filed outside of the applicable limitations period is a conclusion of law. *CMACO Auto. Sys., Inc. v. Wanxiang America Corp.,* ___ F.3d ___, No. 08-1435, 2009 WL 4668562, at *5 (6th Cir. 2009). The application of a legal doctrine, such as the doctrine of equitable tolling, is also a question of law. *Rose v. Dole,* 945 F.2d 1331, 1334 (6th Cir. 1991).

## B. Analysis

Periods of limitation are statutes of repose established to extinguish rights, justifiable or not, that might otherwise be asserted. *English v. Bousamra,* 9 F. Supp. 2d 803, 807-08 (W.D. Mich. 1998) (citing *Kavanagh v. Noble,* 332 U.S. 535, 539 (1947)), aff'd 188 F.3d 507 (6th Cir. 1999). Among other goals, limitations periods are designed to compel plaintiffs to exercise their rights of action within a reasonable time, protect potential defendants from the protracted fear of litigation, and promote judicial efficiency by preventing defendants and courts from having to litigate stale claims. *Id.* (citing *Moll v. Abbott Labs.,* 506 N.W.2d 816, 823 (Mich. 1993); *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491 (6th Cir. 1998)). These statutory restrictions "are not simply technicalities[, but rather are] fundamental to a well-ordered judicial system," *Bd. of Regents*

*v. Tomanio,* 446 U.S. 478, 487 (1980), and, therefore, must be strictly construed. *Id.* (citing *Turner v. Mercy Hosps. & Health Servs.,* 533 N.W.2d 365, 368 (Mich. Ct. App. 1995)).

Defendant argues that Michigan's three-year statute of limitations bars plaintiff's claims against it (Mot. at 4). Michigan law provides that plaintiffs alleging they have incurred an injury to their person as a result of another's negligent conduct are generally required to file suit within three years of accrual of the action. MICH. COMP. LAWS § 600.5805(10). A claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MICH. COMP. LAWS § 600.5827. Defendant argues that even with the benefit of the savings provision for personal representatives, MICH. COMP. LAWS § 600.5852, plaintiff filed his 2008 complaint too late.

Plaintiff does not disagree that he filed his complaint outside Michigan's three-year limitations period. Instead, plaintiff advances two bases for extending the limitations period in this case: first, he argues that the fraudulent concealment of key facts giving rise to his cause of action triggers application of Michigan's fraudulent concealment statute, MICH. COMP. LAWS § 600.5855;[2] and second, plaintiff argues that application of the doctrine of equitable estoppel precludes defendant from arguing that he commenced his cause of action "too late."

**1. Michigan's Fraudulent Concealment Statute**

Michigan's fraudulent concealment statute provides that

> [i]f a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be

_____

[2]Plaintiff does not argue that Florida fraudulent-concealment law would save his claims. In both his Amended Complaint and in his response to defendant's motion, plaintiff relies only on Michigan's fraudulent-concealment statute and case law.

commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

MICH. COMP. LAWS § 600.5855

A plaintiff may not toll a limitations period simply by claiming he reasonably had no knowledge of the tort or the identity of the tortfeasor; rather, he must allege fraudulent concealment. *Trentadue v. Gorton,* 738 N.W.2d 664, 670-71 (Mich. 2007). "The Federal Rules of Civil Procedure, which control pleading in diversity cases, ... require that the acts constituting fraudulent concealment of a claim be pled in the complaint. *See* FED. R. CIV. P. 9(b)." *Evans v. Pearson Enter., Inc.,* 434 F.3d 839, 850 (6th Cir. 2006).

Michigan case law provides that "[w]hen the basis of the action is some wrong other than a fraud, the fraudulent concealment which will work a postponement of the statute must be a concealment produced by affirmative acts or misrepresentations. A mere silence on the part of the defendant is not enough. The plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Draws v. Levin,* 52 N.W.2d 180, 183 (Mich. 1952) (quoting *Dowse v. Gaynor,* 118 N.W. 615, 617 (Mich. 1908)). *See also Platsis v. E.F. Hutton & Co., Inc.,* 642 F. Supp. 1277, 1306 (W.D. Mich. 1986) (citing *Grebner v. Runyon,* 347 N.W.2d 741, 747 (Mich. Ct. App. 1984), aff'd 829 F.2d 13 (1987); *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.,* 698 N.W.2d 900, 909 (Mich. Ct. App. 2005).

Additionally, the state courts have held that a plaintiff relying on fraudulent concealment must exercise reasonable diligence to discover a cause of action. *McNaughton v. Rockford State Bank,* 246 N.W. 84, 86 (Mich. 1933); *Prentis,* 698 N.W.2d at 907 n.2. A plaintiff cannot excuse his

delay in instituting suit on the ground of fraudulent concealment of his cause of action if his failure to discover it is attributable to his own neglect. *McNaughton, supra.*

Consistent with the above state case law, the Sixth Circuit Court of Appeals has delineated the acts constituting fraudulent concealment of a claim as "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Evans,* 434 F.3d at 851. *See also Michigan ex rel. Kelley v. McDonald Dairy Co.,* 905 F. Supp. 447, 451 (W.D. Mich. 1995) (concluding that "[t]he state rule is in accord" with the elements necessary to establish fraudulent concealment of a federal claim).

Last, the Court notes that as a general rule, Michigan courts strictly construe exceptions to statutes of limitations. *Mair v. Consumers Power Co.,* 348 N.W.2d 256, 259 (Mich. 1984); *Turner,* 533 N.W.2d at 367.

Defendant proffers three reasons why Michigan's fraudulent concealment statute does not apply to save plaintiff's claims, even as amended.

**(a)** *Alleged Acts of Concealment by Third Parties Insufficient*

First, defendant argues that Michigan law does not permit the alleged acts of fraudulent concealment committed by Paiva to operate to extend the limitations period against defendant (Reply at 2-8). In this regard, defendant points out, according to the plain language of Michigan's fraudulent concealment statute, that Paiva is not "a person who is or may be liable" for plaintiff's Negligent Hiring and Negligent Supervision/Retention claims inasmuch as Paiva did not have either hiring or firing responsibilities. *Id.* at 8-9.

Tracing the history of the statute, plaintiff contends that Michigan's fraudulent concealment statute is effective against not only the actor who fraudulently conceals but also a non-concealing defendant (Resp. at 3-11). Plaintiff asserts that Paiva's actions, which inured to defendant's benefit, effectuate the fraudulent concealment statute against defendant. *Id.* at 20. Defendant disagrees with plaintiff's statutory construction, characterizing it as "legal sleight-of-hand" (Reply at 1-2).

This Court has examined the parties' arguments and agrees with defendant that Michigan courts have consistently rejected the proposition that fraudulent concealment by one may operate to toll the limitations period against another. In the earliest decision addressing this issue, *Stevenson v. Brooks,* 39 Mich. 160 (1878), the Michigan Supreme Court held that "[t]he provisions of this section cannot be extended by construction to concealments made by persons other than those sought to be charged in the action."

In 1953, Michigan's highest court again held that "[c]oncealment by one other than the one sought to be charged is not within the prohibition of the statute." *Wood,* 59 N.W.2d at 63. At that time, Michigan's fraudulent concealment statute read as follows:

> If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter.

MICH. COMP. LAWS § 609.20 (1948)

A 1954 amendment, Public Act 1954, No. 49, amended the fraudulent concealment statute as follows:

> If any person, who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action[, or conceal the identity of any party thereto,] from the knowledge of the person entitled thereto, the action may be

commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter.

According to plaintiff, the new bracketed language was the legislature's attempt to repudiate the rule of law set forth in *Stevenson* and applied in *Wood*. However, the Michigan Supreme Court did not find that the amendment was intended to address or alter the rule that the statute could not be extended to fraudulent concealments by a person other than the one sought to be charged in the action, i.e., the "person who is liable to any of the actions." Rather, the court held that the legislature had attempted to add a new concealment situation – the concealment of "the identity of any party thereto" – where the limitations period may be tolled. *Ross v. Fisher,* 90 N.W.2d 483, 484-85 (Mich. 1958); *see also Vega v. Briggs Mfg. Co.,* 67 N.W.2d 81, 84 (Mich. 1954) (opining that "the amendment ... added to it another ground on which the statute would be tolled").

In 1979, the Michigan Court of Appeals specifically addressed the question "whether the actions of concealment by a third party operate to extend the statute of limitations against a party who has not participated in any concealment." *Stoneman v. Collier,* 288 N.W.2d 405, 406 (Mich. Ct. App. 1979). Like the supreme court, the court of appeals held that there was no showing that the 1954 amendment "in any way changed the previously established rule that concealment by one other than the one sought to be charged is not within the prohibition of the statute." *Id.* The court opined that "the fraudulent concealment act does not operate against persons who do not participate in the concealment." *Id.* at 407.

As plaintiff points out, the *Stoneman* court did not address the impact of an intervening version of the statute; however, plaintiff's point is merely an academic one as the 1961 version, the current version of the statute, also did not address or alter the *Stevenson* rule of law as to third-party

concealment. Contrary to plaintiff's assertion that "the tortured history of the statute suggests the [1961] amendment finally rang the death knell to *Stevenson's* rule" (Resp. at 12), the Michigan Court of Appeals reiterated in 1986 that "a defendant cannot be penalized for the fraudulent acts of third parties in concealing the defendant's identity where the defendant played no part." *Smith v. Sinai Hosp. of Detroit,* 394 N.W.2d 82, 88 (Mich. Ct. App. 1986). Similarly, the supreme court has not repudiated but acknowledged the continued viability of the rule. *See Trentadue,* 738 N.W.2d at 671 (Corrigan, J., writing for the majority), 689 (Weaver, J., dissenting) ("where there does not appear to be evidence of fraudulent concealment on the part of any of the named defendants, plaintiff would not be able to use this provision").

In sum, Michigan courts have construed the fraudulent concealment statute over the years as applying only to concealment by the "person who is or may be liable" for the plaintiff's claims. Michigan courts have not applied the statute to keep alive a plaintiff's claims based on concealment by third-parties.

Again, questions of concealment are questions of fact, *Wood,* 59 N.W.2d at 62, but the determination that a complaint was filed outside of the applicable limitations period is a conclusion of law, *CMACO, supra.* Even accepting as true plaintiff's factual allegations in this case that Paiva and/or Johnson fraudulently concealed the Negligent Hiring and Negligent Supervision/Retention claims from plaintiff, the allegations are insufficient under Michigan law to state a claim of fraudulent concealment that avoids the statute of limitation as to defendant.

**(b)  *Defendant's Own Alleged Acts of Concealment Insufficient***

Defendant also argues that plaintiff has not pleaded acts by *defendant* that constitute affirmative acts of fraudulent concealment (Mot. at 7).  Plaintiff responds that the allegations of his Amended Complaint make it "plausible" that defendant is "independently captured" by Michigan's fraudulent concealment statute (Resp. at 20).

In his Amended Complaint, plaintiff alleges that defendant fraudulently concealed the Negligent Hiring and Negligent Supervision/Retention claims by (1) maintaining the corporate motto, "I know nothing, see nothing, and speak only in kind words;" (2) maintaining "that a scandal was not to be attached to the company name;" (3) actively promoting a code-of-silence; and (4) directing Paiva and Nelson, within two days of the rape and murder, to secrete themselves in a hotel room to avoid media attention (Am. Compl. ¶¶ 87-89, 92).

The Court finds that the alleged acts amount to "mere silence" or at most, constitute an avoidance of disclosure.  None of these acts constitutes the requisite "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action."  *See, e.g., Doe v. Roman Catholic Archbishop of Archdiocese of Detroit,* 692 N.W.2d 398, 406-07 (Mich. Ct. App. 2004).  Hence, even accepting these allegations by plaintiff as true, the allegations are insufficient to state a claim of fraudulent concealment that avoids the statute of limitation.

**(c)  *Due Diligence Question***

Last, defendant argues that even if plaintiff sufficiently alleged fraudulent concealment, Michigan's fraudulent concealment statute would not save plaintiff's claims because plaintiff had

actual knowledge of the criminal actors (and therefore defendant's alleged civil liability) no later than May 2006 yet did not file this action until December 2008 (Mot. at 8).

Plaintiff agrees that application of Michigan's fraudulent concealment statute requires "diligent discovery of the facts" (Resp. at 17).  Plaintiff argues that he timely filed his action based on application of Michigan's fraudulent concealment statute, MICH. COMP. LAWS § 600.5855, and the additional time provided in the savings provision that applies to actions by personal representative of deceased person, MICH. COMP. LAWS § 600.5852.  *Id.* at 18-19.  Plaintiff asserts that the two-year discovery period of § 5855 runs from the date of Lynch's arrest in February 2006, and that he had an additional three years with the benefit of § 5852, or until February 2011, in which to timely bring this civil suit against defendant.

Section 5852 provides that

> [i]f a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.  But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

MICH. COMP. LAWS § 600.5852

There is no need to delve into either the question of plaintiff's diligence, a question of fact, or the propriety of plaintiff's construction and proposed application of § 5852.  The success of plaintiff's argument relies on the tandem application of the fraudulent concealment statute, MICH. COMP. LAWS § 600.5855, and the additional savings provision, MICH. COMP. LAWS § 600.5852.  As plaintiff has proffered no basis for applying the fraudulent concealment statute to his benefit, *see supra,* the underpinning for his reliance on § 5852 is removed.  Plaintiff cannot show that his action was brought "within 3 years after the period of limitations has run."

**2. Equitable Estoppel Doctrine**

In addition to invoking Michigan's fraudulent concealment statute, plaintiff also asserts that the doctrine of equitable estoppel precludes defendant from obtaining dismissal on the basis that the limitations period expired. Plaintiff argues that it is "plausible" that the doctrine of equitable estoppel applies to the facts of this case (Resp. at 24). Plaintiff asserts that the Michigan Supreme Court in *Trentadue* did not abolish equitable estoppel, only equitable *tolling* (*id.* at 21). Alternatively, plaintiff argues that Michigan's choice-of-law jurisprudence would allow this Court to apply Florida law "where a rational justification exists for displacing Michigan law" and that Florida equitable-estoppel law would allow his cause of action to proceed (*id.*). According to plaintiff, it is reasonable to tie the cause of the injury to actions that occurred in Florida and conclude that it is "mere happenstance" that the injury itself occurred in Michigan (*id.* at 25). Moreover, plaintiff opines that defendant – a Florida corporation – cannot complain that application of Florida law is unfair or contrary to its expectations (*id.*).

Defendant disagrees with plaintiff's reading of *Trentadue,* arguing that plaintiff cannot rely on equitable estoppel under Michigan law to save his claims because the Michigan Supreme Court's decision in *Trentadue* wholly precludes reliance on equitable estoppel (Mot. at 8; Reply at 10). Defendant argues that plaintiff's claims would also not be saved by the doctrine of equitable estoppel under Florida law (Mot. at 10). Defendant argues (1) that plaintiff has not alleged either (a) that defendant acted with an intent to mislead or deceive plaintiff into filing late or (b) that plaintiff's failure to timely file is directly attributable to defendant's misconduct; and (2) that there is no basis for plaintiff to allege that defendant took any affirmative action intended to induce plaintiff not to file a timely claim (*id.*).

The Court agrees that neither Michigan's nor Florida's equitable estoppel jurisprudence produces the result for which plaintiff strives.

**(a)** ***Application in Michigan***

Like the facts giving rise to the case at bar, the circumstances giving rise to the negligence action in *Trentadue* were also tragic. The decedent in *Trentadue* was found raped and murdered in 1986, and the crimes remained unsolved until 2002, when deoxyribonucleic acid (DNA) evidence established that the crimes were committed by an employee of an automatic lawn sprinkler company that serviced the sprinkler system on the grounds where the decedent lived. *Trentadue,* 738 N.W.2d at 667. In 2002, sixteen years after the crimes, the decedent's daughter and the personal representative of her estate brought a negligence action against the killer and his employer. *Id.*

The plaintiff argued that where she was unaware of any basis for the civil action, the harsh result of barring any lawsuit because the period of limitations has expired could be avoided by the operation of a court-created discovery rule, sometimes described as a common-law rule. *Trentadue,* 738 N.W.2d at 670. The Michigan Supreme Court rejected this contention, deciding that the Michigan statutory scheme is "comprehensive" and "exclusive" and thus precludes this common-law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply. *Id.* According to Michigan's highest court, the Legislature undertook the necessary task of balancing plaintiffs' and defendants' interests and allowing for tolling only where it saw fit. *Id.* at 672. The court ultimately concluded that "[s]ince the Legislature has exercised its power to establish tolling based on discovery under particular circumstances, but has not provided for a general discovery rule that tolls or delays the time of accrual if a plaintiff fails to discover the

elements of a cause of action during the limitations period, no such tolling is allowed.... [C]ourts may not employ an extrastatutory discovery rule to toll accrual." *Id.*

In rejecting the discovery rule that would have provided the plaintiff equitable relief, the Michigan Supreme Court observed that "if courts are free to cast aside a plain statute in the name of equity, even in such a tragic case as this, then immeasurable damage will be caused to the separation of powers mandated by our Constitution." *Trentadue,* 738 N.W.2d at 680. The court opined that "[s]tatutes lose their meaning if 'an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity.'" *Id.* (quoting *Devillers v. Auto Club Ins. Ass'n,* 702 N.W.2d 539, 557 (Mich. 2005)).

The plaintiff at bar attempts to draw a fine distinction between equitable tolling and equitable estoppel, concepts that are sometimes referenced and applied interchangeably in Michigan case law. According to plaintiff, equitable estoppel is distinct inasmuch as its use does not "toll" anything but operates against a defendant to bar or "estop" the defendant from profiting from his own misconduct (Resp. at 21-24). However, when the doctrine is used to bar a statute-of-limitations defense, the practical effect of equitable estoppel *is* that the limitations period is tolled or extended. Hence, in *Lothian v. Detroit,* 324 N.W.2d 9, 17 (Mich. 1982), the Michigan Supreme Court explained that the doctrine of equitable estoppel "extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar."

The *Lothian* Court held that to justify the application of estoppel, "one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party." *Lothian,* 324 N.W.2d at 18 (citing 28 AM. JUR. 2D *Estoppel and*

*Waiver* § 35). The court performed an overview of its equitable estoppel cases and discovered that it has been "reluctant to recognize an estoppel in the absence of conduct clearly designed to induce 'the plaintiff to refrain from bringing action within the period fixed by statute.'" *Id.* (quoting *Renackowsky v. Bd. of Water Comm'rs of Detroit,* 81 N.W. 581, 582 (1900)). The *Lothian* court observed that the estoppel exception developed by the courts "seems to be limited to cases involving an intentional or negligent deception. Thus, the defendant will not be precluded from availing himself of such defense [limitations] unless it can be fairly said that he is responsible for deceiving the plaintiff, and inducing him to postpone action upon some reasonably well grounded belief that his claim will be adjusted if he does not sue." *Id.* (internal quotation marks and citations omitted). *See also Cincinnati Ins. Co. v. Citizens Ins. Co.,* 562 N.W.2d 648, 651 (1997) (discussing *Lothian*).

Given the sweeping language in the 2007 *Trentadue* decision, the current status of equitable estoppel in the statute-of-limitations context under Michigan law is not entirely clear. As the parties point out, the Michigan Court of Appeals held, in an unpublished opinion, that the *Trentadue* court "rejected the argument that equitable estoppel should have tolled the running of the statute of limitations." *Bearup v. Gen. Motors Corp.,* Nos. 272654, 272666, 2009 WL 249456, *6 (Mich. Ct. App. 2009). However, other appellate panels, without reference to *Trentadue*, continue to consider the argument that equitable estoppel applies within the statute-of-limitations context. *See, e.g., Siuda v. Tobin,* 2009 WL 3110817, *2 (Mich. Ct. App. 2009); *Paquette v. State Farm Mut. Auto Ins. Co.,* No. 279909, 2009 WL 2168918, *4-6 (Mich. Ct. App. 2009); *Stieler v. Robertson Orion, L.L.C.,* No. 282430, 2009 WL 1099983, *2-3 (Mich. Ct. App. 2009).

Significantly, in *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 819 (Mich. 2008), a decision issued after *Trentadue,* the Michigan Supreme Court held that "equitable tolling, unlike

judicial tolling, has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result." The *McDonald* Court did not consider whether the language in *Trentadue* precluded the plaintiff from invoking equitable estoppel, instead finding that application of the doctrine was unjustified on the facts before it. The *McDonald* panel concluded that "[t]he trial court's factual finding that defendant caused delays is insufficient to grant estoppel because there is no evidence that plaintiff relied on anything defendant did or said." *Id.* at 820.

Assuming that equitable estoppel remains a valid bar for Michigan plaintiffs to assert in opposition to a defendant's statute-of-limitations defense, plaintiff has not demonstrated circumstances that would justify application of the doctrine in this case. Plaintiff has not alleged allegations of conduct "designed to induce" him to refrain from bringing a timely action; rather, as previously discussed, the conduct plaintiff attributes to defendant constitutes, at most, mere silence. A party's silence may give rise to equitable estoppel only where "the silent party had a duty or obligation to speak or take action." *Conagra, Inc. v. Farmers State Bank,* 602 N.W.2d 390, 405-06 (Mich. Ct. App. 1999). Plaintiff has not shown that defendant had a duty to take such action. Thus, plaintiff's allegations do not operate to preclude defendant from availing itself of the limitations defense.

**(b)** *Application in Florida*

Florida courts have been similarly reluctant to recognize an estoppel in the absence of wilfull conduct by the defendant to be estopped. In *Major League Baseball v. Morsani,* 790 So.2d 1071, 1076 (Fla. 2001), which is the case to which plaintiff refers this Court, the Florida Supreme Court instructed that "[t]he doctrine of estoppel is applicable in all cases where one, by word, act or

conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury." In applying *Morsani,* the Florida Court of Appeals opined that the case law "makes clear that an equitable estoppel claim raised in response to a statute of limitations defense must allege that the defendant acted with an intent to mislead or deceive the plaintiff into filing late, and that the plaintiff's failure to timely file is directly attributable to the defendant's misconduct." *Fox v. City of Pompano Beach,* 984 So.2d 664, 668 (Fla. Dist. Ct. App. 2008) (and cases cited therein). Plaintiff's allegations about defendant's actions likewise do not state a claim of equitable estoppel under Florida law.

### (c) *Imputing Paiva's Actions to Defendant*

Last, this Court notes that plaintiff's Equitable Estoppel section references defendant in conjunction with "its supervisors, agents and employees." Paiva is not specifically identified in this section of the Amended Complaint, but plaintiff incorporates by reference his previous allegations (Am. Compl. ¶ 103), which heavily focus on this guard. Plaintiff also argues, albeit within the context of his fraudulent-concealment argument, that Paiva's acts of fraudulent concealment were "for the benefit and on behalf of Wackenhut" (Resp. at 20). Like plaintiff, defendant gave this topic only passing reference, opining in a footnote that there are "sound reasons" for this Court to refuse to impute the criminal actions against defendant (Mot. at 7 n.30).

Under both Michigan and Florida law, an agent's fraudulent acts may be imputed to his principal where the acts are committed within the scope of his authority. *Taco Bell of California v. Zappone,* 324 So.2d 121, 123 (Fla. Dist. Ct. App. 1975) ("[T]o bind his principal, an agent's actions must be within the scope of his express or implied, i.e., his 'actual or real' authority, or be

of such a nature as third parties would be entitled to rely upon as being within his 'apparent' authority."); *MCA Fin. Corp. v. Grant Thornton LLP,* 687 N.W.2d 850, 857 (Mich. Ct. App. 2004) ("The parties agree that the fraudulent acts of a corporate officer may be imputed to a corporation where those acts (1) are in the course of employment and (2) are for the benefit of the corporation."). *See also People v. American Med. Centers of Michigan, Ltd.,* 324 N.W.2d 782, 793 (Mich. Ct. App. 1982) ("It is well settled that a corporation is liable for the fraudulent conduct of its president where the conduct was within the scope of his authority.").

Assuming the factual truth of plaintiff's allegations about Paiva's appalling actions in conspiring to cover up the decedent's rape and murder, his actions cannot be said to have been committed within the scope of his authority or course of his employment by defendant. Therefore, even if plaintiff's failure to timely file is directly attributable to Paiva's misconduct, Paiva's actions do not provide a basis for estopping *defendant* from asserting the limitations period as a defense.

## III.  CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss (Dkt 24) is GRANTED.

An Order of Dismissal consistent with this Opinion will enter.


DATED: January 19, 2010               /s/ Janet T. Neff_____
                                      JANET T. NEFF
                                      United States District Judge